**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 5, 2014**

# In the Court of Appeals of Georgia

A13A2226. TISDALE v. CITY OF CUMMING, GEORGIA.

MCMILLIAN, Judge.

Nydia Tisdale appeals[1] the trial court's order denying her claim for an injunction against the City of Cumming (the "City") seeking a declaration that a real estate acquisition by the City on April 16, 2012, was ultra vires, null and void under Georgia's Open and Public Meetings Act, OCGA § 50-14-1, et seq. (the "Act"). Tisdale's complaint also sought civil penalties and attorney fees under the Act. We affirm the trial court's denial of Tisdale's claims because we find that her complaint was untimely.

---

[1] Tisdale originally filed this appeal in the Supreme Court of Georgia, which transferred the case to this Court after finding that the appeal did not meet the definition of a case involving title to land and that it did not invoke the Supreme Court's equity jurisdiction.

"Generally, a trial court's discretion in granting or denying an injunction will not be disturbed on appeal as an abuse of discretion unless there was no evidence upon which to base the ruling or it was based on an erroneous interpretation of the law." (Citations omitted.) *Kim v. First One Group, LLC*, 305 Ga. App. 861, 861 (700 SE2d 729) (2010). And we review issues of law de novo. (Citation omitted.) *Harris v. The Southern Christian Leadership Conference, Inc.*, 313 Ga. App. 363, 364 (721 SE2d 906) (2011).

This action arose out of the City's purchase of real estate in the Pilgrim Ridge Subdivision (the "Property"), and the basic facts are undisputed. On March 20, 2012, the City's mayor and council held a regularly scheduled, public council meeting (the "March 20 meeting"). The minutes of that meeting reflect that the mayor and council "were properly notified as required by law," all council members were present, and the mayor presided. At the end of the meeting, the mayor "announced the need for Executive Session to discuss issues concerning the Purchase of Real Property" (the "Executive Session").

The minutes from the Executive Session reflect that the mayor led a discussion with the council about the purchase of the Property, as a potential site of the City's "future Water Distribution and/or Water Production facilities," because it was near

2

the existing water intake facility and had gone through foreclosure, making it "likely available at less than its appraised value." The minutes reflect that the council authorized the mayor "to attempt to negotiate and close a contract on behalf of the City for less than the appraised value."

The deeds reflecting the City's subsequent purchase of the Property were executed on April 16, 2012, and were recorded on the Forsyth County real estate records the same day.

The day after the purchase, on April 17, 2012, at the regularly scheduled public meeting of the City's mayor and council (the "April 17 meeting"),[2] the mayor announced that the City had held negotiations for the Property, which it proposed to use "for expansion of the Utilities Department and other uses." It was noted that the purchase of the Property had previously been authorized by council in Executive Session. At the mayor's request, the council voted unanimously to ratify "the previous authorization for [the mayor] to sign the necessary documents for the purchase of the

---

[2] The minutes for that meeting reflect that it, too, was properly noticed and attended by all members of the council, with the mayor presiding.

3

[Property] for $25,000.00 per acre." Tisdale admits in her brief that she attended the April 17 meeting.[3]

Tisdale filed her complaint in this action on October 12, 2012, and following a hearing on January 18, 2013, the trial court issued its order denying the injunction. Although the trial court found that the Executive Session on March 20 did not comply with the Act, it found that the April 17 meeting was held in compliance with the law. Citing *Bd. of Commrs. v. Levetan*, 270 Ga. 544, 548 (512 SE2d 627) (1999), the trial court concluded that the Act did not authorize it to invalidate the City's purchase of the Property on the ground that the purchase previously had been discussed at a meeting that violated the Act, where it was subsequently approved at a meeting held in compliance with the Act.

---

[3] Tisdale asserts that the mayor prevented her from video and audio recording that meeting, which she asserts is another violation of the Act. She represents that two other lawsuits have been filed in connection with that alleged violation, and we conclude that it has no relevance to this appeal. Moreover, in support of her assertion, Tisdale cites to a URL address, which she represents contains a video recording of the April 17 meeting, but we cannot consider a citation to a URL address as evidence, even though she used the same citation in her verified complaint. No recording of the April 17 meeting was introduced into evidence at the hearing, and it does not otherwise appear as evidence in the appellate record. In any event, Tisdale made no attempt to authenticate the recording at the URL address, as required under OCGA § 24-9-901 for its admission into evidence.

The trial court also found that Tisdale attended both council meetings at issue, but did not file this action until 206 days after the Executive Session on March 20 and 179 days after the April 17 meeting. The trial court noted that Tisdale was present at the April 17 meeting when the council ratified the mayor's purchase of the Property, after announcing that it previously had been approved in the Executive Session on March 20. Accordingly, the trial court concluded that Tisdale's claims were barred by the Act's statute of limitation, which requires that any action be brought within 90 days of the alleged violation.[4] OCGA § 50-14-1 (b) (2).

The current version of OCGA § 50-14-1 (b) (2) actually contains both a ninety-day limitation provision and a six-month repose provision. The statute provides in relevant part:

---

[4] We note that the trial court first indicated that the City's statute of limitation defense was "moot" in light of its holding that the Act did not authorize the invalidation of the City's purchase. But an issue or case is "[']moot['] when its resolution would amount to the determination of an abstract question not arising upon existing facts or rights." *Collins v. Lombard Corp.,* 270 Ga. 120, 121 (1) (508 SE2d 653) (1998). The City's statute of limitation defense did not present an abstract argument but rather presented an *alternative* argument to the City's other defenses. All of the defenses were subject to determination upon existing facts or rights. Therefore, although the trial court was not required to reach the statute of limitation issue in light of its holding on the merits under the Act, the limitation issue was not moot.

Any action contesting a resolution, rule, regulation, ordinance, or other formal action of an agency based on an alleged violation of this provision shall be commenced within 90 days of the date such contested action was taken or, if the meeting was held in a manner not permitted by law, within 90 days from the date the party alleging the violation knew or should have known about the alleged violation so long as such date is not more than six months after the date the contested action was taken.

OCGA § 50-14-1 (b) (2).[5]

It is undisputed that Tisdale filed her action more than 90 days after the alleged violations occurred. But Tisdale contends that we should apply the six-month repose period because she did not know what happened in the Executive Session until after she filed her lawsuit and obtained a redacted copy of the minutes of the Executive Session in discovery. Tisdale notes that she filed her complaint less than six months after the April 17 meeting.

---

[5] The prior version of the statute contained only the ninety-day statute of limitation for challenging formal action taken by an agency, but the statute was amended as of April 17, 2012, the same day as the April 17 meeting in this case, to add a ninety-day limitation period for challenges to meetings held in violation of the law and to include a six-month statute of repose. Ga. L. 2012, Act 605, § 1. Although the prior version of the Act was still in effect on the date of the March 20 meeting, the parties agree that the current version of the statute applies in this case.

6

But even assuming, without deciding, that the Executive Session was held "in a manner not permitted by law," the statute required Tisdale to file her action within 90 days from the date that she "knew *or should have known* about the alleged violation." (Emphasis supplied.) OCGA § 50-14-1 (b) (2). Although Tisdale was not privy to the proceedings in the Executive Session on March 20, the City produced evidence indicating that she knew as of April 17 that the council initially authorized the mayor to purchase the Property in that earlier Executive Session. The minutes reflect that this information was disclosed at the April 17 meeting she attended. Tisdale does not dispute this fact.

Moreover, the deeds reflecting the City's purchase were filed as of record on April 16, 2012, providing constructive notice that the transaction occurred. As our Supreme Court has found "in the absence of fraud,[6] a deed which, on its face, complies with all statutory requirements is entitled to be recorded, and once accepted and filed with the clerk of court for record, provides constructive notice to the world of its existence." *Leeds Bldg. Products, Inc. v. Sears Mortgage Corp.*, 267 Ga. 300, 302 (1) (477 SE2d 565) (1996). Accordingly Tisdale was on constructive notice as

---

[6] No contention of fraud exists in this case.

of April 16 that the purchase had occurred, and she knew that it was not approved in a public meeting until one day later, on April 17.

Tisdale's knowledge that the Executive Session took place to discuss the real estate purchase, the filing of the deeds, and the purported ratification of the purchase of the Property, which Tisdale witnessed, put Tisdale on, at least, constructive notice of any potential violations of the Act. Thus, the 90-day period began running, at the latest, on April 17, 2012, for purposes of both the limitation and repose provisions of OCGA § 50-14-1 (b) (2). See *Shepherd v. Frasier*, 223 Ga. 874, 876 (2) (159 SE2d 58) (1968) (constructive notice from filed deed bars claim unless plaintiffs allege a sufficient excuse for their failure to learn of the existing facts in support of claim)*; Schmidt v. Parnes*, 194 Ga. App. 622, 623 (1) (391 SE2d 459) (1990) ("the statute of limitation or repose is not tolled when the plaintiff knew all facts necessary to show [violation] before the running of the period of limitation or repose.") (citation and punctuation omitted).

Once the City produced evidence on summary judgment establishing that Tisdale's claims were barred, the burden of production shifted to Tisdale to produce some admissible evidence demonstrating that her claims were not untimely. See *Parks v. Hyundai Motor Am., Inc.*, 294 Ga. App. 112, 116 (2) (668 SE2d 554) (2008).

8

See also *Pfeiffer v. Ga. Dept. of Transp.,* 275 Ga. 827, 828-829 (2) (573 SE2d 389) (2002) ("once a defendant points out that there is an absence of evidence to support plaintiff's case, the burden then shifts to the plaintiff, who *must* point to specific evidence giving rise to triable issue.") (citations and punctuation omitted; emphasis in original); *Allmond v. Young,* 314 Ga. App. 230, 232 (2) (723 SE2d 691) (2012) (once defendant established that limitations period has run, burden shifts to plaintiff to present some evidence of tolling). Tisdale failed to carry her burden of producing evidence sufficient to create an issue of fact on the statute of limitation or the repose provision. Accordingly, we agree with the trial court that Tisdale's claims under the Act are barred under OCGA § 50-14-1 (b) (2). See *Walker v. City of Warner Robins,* 262 Ga. 551, 552 (3) (422 SE2d 555) (1992); *Anti-Landfill Corp., Inc. v. North American Metal Co., LLC,* 299 Ga. App. 509, 513 (1) (683 SE2d 88) (2009).[7]

---

[7] In her reply brief, Tisdale asserts that we should apply longer limitation periods based on her constitutional claims and her claim for money damages. But Tisdale does not point us to, and we fail to find in the record, where she raised these arguments below or that the trial court ruled on them. The Georgia Supreme Court "has specifically held that, in responding to a motion for summary judgment, plaintiffs have a statutory duty to produce whatever viable theory of recovery they might have or run the risk of an adjudication on the merits of their case. . . . To consider the case on a completely different basis from that presented below would be contrary to the line of cases holding, 'He must stand or fall upon the position taken in the trial court.'"(Citations and punctuation omitted.) *Pfeiffer*, 275 Ga. at 828-829 (2). See also *Dan J. Sheehan Co. v. Ceramic Technics, Ltd.*, 269 Ga. App. 773, 777

2. Given this holding, we need not address the merits of Tisdale's claims under the Act.

*Judgment affirmed. Andrews, P. J., and Dillard, J., concur.*

---

(3) (605 SE2d 375) (2004) (appellate courts "do not consider issues raised for the first time on appeal, because the trial court has not had opportunity to consider them.") (citation and punctuation omitted).