**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and PINSON, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 18, 2021**

# In the Court of Appeals of Georgia

A21A0789. SMITH et al. v. CITY OF ROSWELL et al.

A21A0790. SMITH et al. v. CITY OF ROSWELL.

MERCIER, Judge.

These consolidated appeals arise from two lawsuits following a fatal vehicle collision. Steve Smith and his daughter, Sydney Smith,[1] died after their vehicle, which Steve was driving while under the influence, left the road and collided with two mailboxes owned by Alvin and Judith Nash, and Shannon and Ted Steward. Steve's wife and Sydney's mother, Micah Smith, filed a lawsuit individually, and as the administrator of Sydney's estate, against Ann Herrera, the administrator of Steve's estate, the City of Roswell, the Nashes, the Stewards, and other defendants.

---

[1] For the purpose of clarity, after the initial mention we will refer to members of the Smith family by their first names.

Thereafter, Herrera, as Steve's administrator, filed a cross-claim against the other defendants for Steve's estate's claims.

Samantha Smith, Micah and Steve's other daughter, filed Steve's wrongful death lawsuit against the City, the Nashes, the Stewards, and other defendants in the other underlying action. In both actions, the plaintiffs allege that the mailboxes proximately caused Sydney and Steve's deaths, and that the City of Roswell negligently failed to remove the Stewards' and Nashes' mailboxes. Further, the appellants contend that the City's failure to remove the mailboxes was ministerial in nature.

The cases are before us following multiple motions to dismiss and a motion to consolidate. In Case No. A21A0789, the Stewards and Nashes filed motions to dismiss, arguing that Samantha lacked standing to bring Steve's wrongful death lawsuit. The trial court agreed, found that Samantha was not the real party in interest and concluded that Micah, as the surviving spouse, must bring Steve's wrongful death lawsuit. In both appeals, the trial court granted the City of Roswell's motion to dismiss, finding that the plaintiffs failed to prove waiver of the City's sovereign immunity. Samantha also filed a motion to consolidate the underlying cases, which the trial court denied.

2

In both appeals, the appellants claim that the trial court erred by dismissing the City. Additionally, in Case No. A21A0789 Samantha and Herrera claim that the trial court erred by refusing to order consolidation, and by refusing to allow Samantha to proceed as the plaintiff in her father's wrongful death lawsuit.

*Case No. A21A0789*

1. Samantha filed a motion to consolidate Steve's wrongful death and estate claims. The trial court declared the motion moot in light of a ruling in the companion case which allowed Micah to be substituted in place of Samantha. The court also denied the Nashes' and Stewards' motions to dismiss, ordering that Micah be joined as the proper party plaintiff in Steve's wrongful death action and Samantha would then be dismissed. Unfortunately, after the parties filed their appellate briefs, Micah passed away.

(a) Samantha and Herrera claimed in their appellate briefs that the trial court erred by refusing to allow Samantha to bring Steve's wrongful death claim when her mother, Micah, declined to file the claim. However, as Steve's surviving spouse Micah passed away, Samantha, as Steve's only living child, is the proper party to bring Steve's wrongful death claim. See OCGA § 51-4-2 (b) (1) ("If an action for wrongful death is brought by a surviving spouse under subsection (a) of this Code

3

section and the surviving spouse dies pending the action, the action shall survive to the child or children of the decedent."). Therefore, this enumerated error is now moot. See *In the Interest of I. S.*, 278 Ga 859, 861 (607 SE2d 546) (2005) ("The general rule is that appellate courts do not consider moot questions.") (citation and punctuation omitted).

(b) Samantha and Herrera contend that the trial court erred by failing to consolidate Steve's wrongful death and estate claims. We review a trial court's ruling on a motion to consolidate for an abuse of discretion. See *Ferguson v. Carver*, 257 Ga. App. 849, 850 (572 SE2d 700) (2002).

> When actions involving a common question of law or fact are pending before the court, if the parties consent, the court may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

OCGA § 9-11-42 (a). "Generally, all parties must consent to the consolidation of separate actions." *Hall v. Hill*, ___ Ga. App. ___ (3) (859 SE2d 897) (2021). Undisputably, the defendants in the present matter did not consent to consolidation.

4

The Georgia Supreme Court has carved out a narrow exception and held that absent consent, consolidation may still be ordered "on the defendant's motion, of all claims which derive from personal injuries sustained by a single individual." *Stenger v. Grimes*, 260 Ga. 838, 839 (1) (400 SE2d 318) (1991) (emphasis omitted). The exception was created to avoid subjecting a defendant "to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the two claims made against [the defendant.]" Id. (citation and punctuation omitted). Such is not a danger here. Steve's estate was named as a defendant in Sydney's wrongful death action. Thereafter, Herrera, as the administrator, filed a cross-claim against the City, the Nashes, the Stewards, and other defendants for Steve's estate's claims. While judicial economy may favor consolidation of the two cases, such a scenario does not fall within the narrow *Stenger* exception. As such, the trial court did not abuse its discretion by denying to order consolidation.[2]

*Case Nos. A21A0789 and A21A0790*

2. In granting the City's motion to dismiss, the trial court found that the plaintiffs failed to state a claim because they could not meet their burden of proof

---

[2] Of note, the Stewards and Nashes objected to consolidation, in part, because they believed Samantha was an improper party to Steve's wrongful death action.

5

regarding the City's waiver of sovereign immunity. "A motion to dismiss for failure to state a claim should not be granted unless the allegations of the complaint demonstrate to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support thereof." *City of Atlanta v. Mitcham*, 296 Ga. 576, 577 (1) (769 SE2d 320) (2015).

Municipal corporations are protected by sovereign immunity. See Ga. Const. of 1983, Art. IX, Sect. II., Par. IX; OCGA § 36-33-1 (a) ("it is the public policy of the State of Georgia that there is no waiver of the sovereign immunity of municipal corporations of the state and such municipal corporations shall be immune from liability for damages"). However, the General Assembly has carved out two applicable exceptions. First, "[a] municipal corporation shall not waive its immunity by the purchase of liability insurance . . . unless the policy of insurance issued covers an occurrence for which the defense of sovereign immunity is available, and then only to the extent of the limits of such insurance policy." See OCGA § 36-33-1 (a). Second, a municipal corporation may be held liable for its "neglect to perform or improper or unskillful performance of [the municipal corporation's] ministerial duties[.]" OCGA § 36-33-1 (b). See also *Gatto v. City of Statesboro*, 353 Ga. App. 178, 181 (1) (834 SE2d 623) (2019).

6

The applicability of sovereign immunity to claims brought against the State is a jurisdictional issue. Indeed sovereign immunity like various other rules of jurisdiction and justiciability is concerned with the extent to which a case properly may come before a court at all. Therefore, the applicability of sovereign immunity is a threshold determination, and, if it does apply, a court lacks jurisdiction over the case and, concomitantly, lacks authority to decide the merits of a claim that is barred.

*City of College Park v. Clayton County*, 306 Ga. 301, 314 (5) (830 SE2d 179) (2019) (citation and punctuation omitted).

"The burden of demonstrating a waiver of sovereign immunity rests upon the party asserting it." *Ga. Dept. of Labor v. RTT Assoc.*, 299 Ga. 78, 81 (1) (786 SE2d 840) (2016). Whether sovereign immunity has been waived under the undisputed facts is a question of law, and we conduct a de novo review. See id.

(a) Both appellants claim that the trial court erred by holding that the City's purchase of insurance did not waive its sovereign immunity. The appellants attached certified copies of the City's insurance policy to their complaints. But the City attached a copy of its insurance policy endorsement to its reply brief in support of its

motion to dismiss.[3] The endorsement states that the policy provides no coverage for any occurrence "for which any insured would otherwise have an exemption or no liability because of sovereign immunity, any governmental tort claims act or laws, or any other state law or federal law. Nothing in this policy, coverage part or coverage form waives sovereign immunity for any insured." See *Gatto*, supra at 183-184 (2) (when an insurance policy endorsement expressly excludes occurrences when sovereign immunity applies there is no waiver of sovereign immunity). The trial court held that the City's purchase of insurance did not waive its sovereign immunity due to the express language of the endorsement

"[I]t is not enough that [the] plaintiff[s] show the existence of a liability policy; the plaintiff[s] must also show that the claims at issue are covered claims and that they are not otherwise excluded from the policy's coverage." *City of Alpharetta v. Vlass*, 360 Ga. App. 432, 437-438 (2) (861 SE2d 249) (2021). While the appellants now claim that the endorsement was inadmissible, they failed to file a brief or motion challenging the admissibility or applicability of the endorsement at the trial court

---

[3] "[T]he trial court may receive evidence and make relevant factual findings to decide the threshold issue of whether a defendant's entitlement to sovereign immunity deprives the court of subject matter jurisdiction." *James v. Ga. Dept. of Public Safety*, 337 Ga. App. 864, 867 (2) (789 SE2d 236) (2016).

level. The appellants contend that they had no opportunity to challenge the endorsement below, because the endorsement was attached to the City's reply brief. However, the City's reply brief to its motion to dismiss was filed almost a year prior to the trial court issuing its order. Furthermore, following the trial court's order granting the City's motion to dismiss, Samantha and Herrera filed a motion for reconsideration, but they failed to challenge the endorsement. Therefore, the appellants' argument that they raised a challenge to the endorsement at the first opportunity is unavailing.

"[A]ppellate courts do not consider issues raised for the first time on appeal, because the trial court has not had opportunity to consider them." *Tisdale v. City of Cumming*, 326 Ga. App. 19, 23 (n. 7) (755 SE2d 833) (2014) (citation and punctuation omitted); see also *Eichenblatt v. Piedmont/Maple*, 341 Ga. App. 761, 767 (3) (801 SE2d 616) (2017) (this Court will not resolve an evidentiary challenge for the first time on appeal). As such, we affirm the trial court's ruling that the appellants failed to demonstrate that the City waived its sovereign immunity by the purchase of liability insurance.

(b) Finally, the appellants contend that the City had a ministerial duty to remove the mailboxes and as such the City was not entitled to sovereign immunity.

9

A city's liability regarding public roads is set out in OCGA §32-4-93 (a), which holds that:

> A municipality is relieved of any and all liability resulting from or occasioned by defects *in the public roads* of its municipal street system when it has not been negligent in constructing or maintaining the same or when it has no actual notice thereof or when such defect has not existed for a sufficient length of time for notice thereof to be inferred.

(emphasis supplied). In other words, "municipalities generally have a ministerial duty to keep their streets in repair, and they are liable for injuries resulting from defects after actual notice, or after the defect has existed for a sufficient length of time for notice to be inferred." *Mayor and Aldermen of the City of Savannah v. Herrera*, 343 Ga. App. 424, 428 (1) (808 SE2d 416) (2017) (citation and punctuation omitted).

The question at hand is whether the mailboxes constitute defects in the public roads pursuant to OCGA § 32-4-93 (a). See *Herrera*, supra. While the statute limits the waiver of sovereign immunity to "defects in the public roads," Georgia appellate courts have interpreted that to include defects outside of the roadway that directly impede travel on a public road. See id. at 429 (1) (defects in the public roads "have been held to include objects adjacent to, and suspended over, the municipality's streets and sidewalks, the presence of which renders the use of these thoroughfares

10

more hazardous") (citation and punctuation omitted). In *Herrera*, supra, we found that a question of material fact existed as to whether trees adjacent to a street obstructed the view of oncoming traffic such that it was a defect pursuant to OCGA § 32-4-93. Id. at 429-431 (1). We have also held that a fact issue existed as to whether a power pole six inches from the curb line of the street constituted a defect after a bus passenger's arm, which had been propped in an open bus window, became wedged between the bus and a power pole as the bus traveled down the road. See *Kicklighter v. Savannah Transit Auth.*, 167 Ga. App. 528, 530-531 (2) (307 SE2d 47) (1983). Moreover, in *Kicklighter*, we noted that "the wheels of the bus never left the paved portion of the road and stayed within the curb, and that the bus was going forward when the accident occurred." Id. at 529 (1).

> Where a plaintiff alleges that the defective condition which caused injury was located on a part of the city's street and sidewalk system, there must be some evidence that the defect was located in an area accepted by the city, either expressly or by implication, for use as a street or sidewalk, before the city can be charged with liability for negligently failing to maintain the area in a reasonably safe condition.

*City of Alpharetta v. Hamby*, 352 Ga. App. 511, 515-516 (1) (b) (ii) (835 SE2d 366) (2019) (citation and punctuation omitted) (reversed a denial of a motion for directed

11

verdict, finding that the lack of barrier on a retaining wall on the shoulder of a road was not a defect pursuant to OCGA § 32-4-93).

The complaints in both underlying actions state that Steve and Sydney's vehicle "left the roadway" prior to colliding with the mailboxes. To support their argument that the mailboxes affected travel on the road, the appellants point to an affidavit from Herman Hill, an engineer, who averred that the "illegal mailboxes encroach[ed] on the right of way." However, the mailboxes were indisputably not in or on the road, as the vehicle "left the roadway" prior to the collision. See *City of Vidalia v. Brown*, 237 Ga. App. 831, 832-834 (1) (516 SE2d 851) (1999) (physical precedent only) (hole in grassy area, but within road "right-of-way," was not a defect for which the city was liable). The appellants fail to point to any case law, and we have not found any, to support their claim that cities have a ministerial duty to keep an area next to a road safe from defects when the defects do not impede travel on the road.

The appellants point to rules and regulations from the United States Postal Service, the Georgia Department of Transportation, and City of Roswell in support of their argument that the City failed to perform its ministerial duties. However, the aforementioned rules and regulations provide rules for the construction of mailboxes

12

or the removal of street obstructions. They do not impose a ministerial duty on the City to remove mailboxes. See OCGA § 36-33-2 ("Where municipal corporations are not required by statute to perform an act, they may not be held liable for exercising their discretion in failing to perform the act."). As the appellants failed to meet their burden to prove waiver of the City's sovereign immunity, we affirm the trial court's dismissal of the City.

*Judgments affirmed. Dillard, P. J., and Pinson, J., concur*.